UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WANDA M. GOMEZ,

                Plaintiff,

           - against -

THE NEW YORK CITY DEPARTMENT OF
EDUCATION; JOEL I. KLEIN, Chancellor;         MEMORANDUM AND ORDER
GLORIA BUCKERY, Regional Superintendent;     06-CV-2741 (RRM) (CLP)
JACQUELINE PEEK-DAVIS, Community
Superintendent; MARLENE ROY, Local
Instructional Superintendent; and BERTHE
FAUSTIN, Principal of P.S. 189, *in their official
and individual capacities*,

                Defendants.
------------------------------------------------------------X
MAUSKOPF, United States District Judge.

        Plaintiff Wanda M. Gomez ("Gomez") commenced this action in June 2006 against Defendants the New York City Department of Education ("DOE"), Chancellor Joel I. Klein ("Klein"), Regional Superintendent Gloria Buckery ("Buckery"), Local Instructional Superintendent Marlene Roy ("Roy"), and Principal Berthe Faustin ("Faustin"). Gomez's Complaint originally asserted five claims, including (1) claims of discriminatory treatment and retaliation, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); (2) a Title VII "hostile work environment" claim; (3) a claim under 42 U.S.C. § 1983, asserting violations of Gomez's Fourteenth Amendment rights; and claims under (4) the New York State Executive Law and (5) the New York City Administrative Code. Gomez's claims arise from her being denied tenure as an Assistant Principal in August 2005.

        On August 26, 2008, the Defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56, seeking dismissal of the Complaint in its entirety.

1

On November 17, 2008, this Court referred the Defendants' motion to the assigned Magistrate Judge, the Honorable Cheryl L. Pollak, for a Report and Recommendation pursuant to Rule 72(b). Judge Pollak issued her Report and Recommendation, see Docket No. 61 (the "R&R"), on March 20, 2009, recommending that the Defendants' motion be granted in part and denied in part. Specifically, Judge Pollak recommended that the Defendants' motion be granted with respect to Gomez's hostile work environment and retaliation claims under Title VII and her § 1983 claims against all Defendants but Faustin. Judge Pollak further recommended that the Defendants' motion be denied as to Gomez's Title VII disparate treatment claim against the DOE and her § 1983 claim against Faustin.[1]

On May 4, 2009, the Defendants filed timely objections to the R&R pursuant to Rule 72(b)(2), challenging those portions recommending denial of the Defendants' summary judgment motion. On June 5, 2009, Gomez filed her response to the Defendants' objections.

---

[1] There has been some confusion over the status of Gomez's State and City law claims. In her R&R, Judge Pollak wrote that the Defendants "failed to address" those claims in their moving papers. In fact, Defendants *did* address those claims, albeit briefly. In their memorandum of law in support of the summary judgment motion, Docket No. 42 ("Defs.' Mem."), the Defendants wrote:

> At the conference concerning defendants' request for leave to file a motion for summary judgment, plaintiff conceded that she had not filed a notice of claim in this action pursuant to New York Education Law § 3813 *and agreed to withdraw plaintiff's State and City law claims*.

Defs.' Mem. at 3 n.1 (emphasis added). Indeed, as the Defendants observed, Gomez voluntarily withdrew her State and City law claims on the record at the March 13, 2008 pre-motion conference, as was noted in the Minute Entry filed that same date. (*See* Docket No. 37.)

Both sides now appear to have forgotten that fact, as the Defendants' most recent submission argues the merits of those claims in urging their dismissal, see Docket No. 63 ("Defs.' Objs. to R&R") at 15, while Gomez's counters that "Judge Pollack correctly denied the Defendants' motion to dismiss Plaintiff's State and City causes of action," see Docket No. 64 ("Pl.'s Resp. to Defs.' Objs. to R&R") at 8.

In any event, as the Defendants previously – and correctly – noted, Gomez voluntarily withdrew her State and City law claims on March 13, 2008, and those claims are no longer pending before this Court.

Gomez did not, however, raise any objections of her own as to those portions of the R&R that recommended granting the Defendants' motion in part and dismissing certain of Gomez's claims. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(3), the Court has reviewed *de novo* those parts of the R&R as to which a timely objection was raised. For the reasons set forth below, the Court concurs with Judge Pollak's recommendations as to the disposition of the Defendants' motion. Accordingly, the Defendants' summary judgment motion is hereby GRANTED in part and DENIED in part. Gomez's Title VII claims for hostile work environment and retaliation, as well as her § 1983 claims against all Defendants but Faustin, are DISMISSED. Both Gomez's Title VII disparate treatment claim against the DOE and her § 1983 claim against Faustin, however, withstand summary judgment and will proceed toward trial.

## BACKGROUND

The following facts are either undisputed or set forth in the light most favorable to Gomez, the non-moving party. *See Sassaman v. Gamache*, 566 F.3d 307, 313 (2d Cir. 2009).

### A. Gomez's employment history

Gomez, who self-identifies as Hispanic, obtained a teaching license in 1975 and began her teaching career with the DOE in September of that year. (Defs.' 56.1 Stmt. ¶ 1; Pl.'s 56.1 Resp. ¶ 3.) In 1997, Gomez acquired an Assistant Principal's license and served as Acting Assistant Principal at New York City Public School ("P.S.") 12 until that temporary position expired at the end of the 1997-98 academic year. (Defs.' 56.1 Stmt. ¶ 5; Pl.'s 56.1 Resp. ¶ 4.)

Gomez was assigned to work as an Assistant Principal at P.S. 189 during the 2000-01 school year, and was officially appointed to that position on or around August 27, 2001. (Defs.'

56.1 Stmt. ¶¶ 4, 6.) Gomez began a probationary period set to end in the summer of 2005, at which time, based upon her "experience at the school and [her] Principal's recommendation," she would be eligible for tenure as an Assistant Principal. (Gomez Dep. at 76:22-25.)

In or around August 2002, Defendant Faustin, who self-identifies as Haitian-American, became the new Principal of P.S. 189, and thus became Gomez's supervisor. (Def's 56.1 Stmt. ¶ 10.) Gomez characterized her relationship with Faustin during the 2002-03 school year as positive. (*See* Pl.'s 56.1 Cntr. Stmt. ¶ 12.) Faustin gave Gomez a "Satisfactory" rating at the end of the 2002-03 school year, citing Gomez's "ability to lead teachers," her organizational talents, and her overall value to the school. (Def's 56.1 Stmt. ¶ 13.)

The following year, Faustin changed Gomez's assignment, putting her in charge of Kindergarten through Third Grade, Special Education, and Bilingual Education. For the two previous school years, Gomez had been assigned to supervise the Sixth through Eighth Grades. (*Id.* ¶ 14.) Gomez did not object to the change in assignment, nor does she now contend that the change in assignment was an adverse employment action. (*Id.* ¶¶ 15-16.) On or about December 23, 2003, Faustin sent Gomez a letter, stating that Gomez "continu[es] to be a very strong anchor for us all," adding that the "school is certainly a better place today because of [her] contributions." (Pl.'s Ex. D: Letter from Faustin to Gomez dated Dec. 23, 2003.)

## B. Gomez's alleged performance deficiencies

Faustin first began documenting alleged shortcomings in Gomez's performance in approximately June 2004. (*See* Pl.'s Exhibit D: Letter from Faustin to Gomez dated June 23, 2004.) In that letter, Faustin commented on Gomez's alleged lack of focus on instruction and teacher observation. (*Id.*) Then, on June 30, 2004, Faustin delivered two more letters to Gomez – the first asserted that Gomez had failed to formally observe, rate, and document a certain

teacher's instructional skills (or lack thereof), and the second referenced an alleged lack of "academic rigor" in Gomez's designated grades. (*See* Defs.' Exs. C & D: Letters from Faustin to Gomez dated June 30, 2004.)

Gomez testified that when she returned to P.S.189 after the 2004 summer break, Faustin expressed her displeasure with being unable to contact her during the summer – a criticism that Gomez contends was unfounded because (1) Faustin never asked her to remain available over the summer, and (2) never before had the school's administration attempted to contact her during the summer break. (Gomez Dep. at 57:17-20; Pl.'s 56.1 Resp. ¶ 27.) Gomez also alleges that on December 7, 2004 and June 27, 2005, Faustin subjected her to embarrassing and public verbal barrages. (Pl.'s 56.1 Cntr. Stmt. ¶ 39; Gomez Dep. at 155-56.)

On January 28, 2005, Gomez received an "Unsatisfactory" mid-year rating for the 2004-05 school year. (Defs.' Ex. D: Letter from Faustin to Gomez dated Jan. 28, 2005.) In her report, Faustin admonished Gomez for allegedly failing to analyze the results of monthly exams, and for submitting two teacher observations that were "weak in content, verbiage, and recommendations." (*Id.*) Faustin wrote several letters to Gomez, dated March 19, 2005, purporting to identify several problem areas in Gomez's performance. (*See* Defs.' Ex. L: Letters from Faustin to Gomez dated Mar. 19, 2005.) Collectively, the letters accuse Gomez of: (1) "insubordination" for her failure to attend a learning walk on February 17, 2005; (2) failure to follow proper disciplinary procedures; and (3) failure to ensure that all teachers under her supervision provided classroom essentials and implemented "academic rigor" in their classrooms. (Pl.'s Ex. H; Defs.' 56.1 Stmt. ¶¶ 35-36.) Gomez contends that, although the letters are dated March 19th, she did not receive them until May 11th – nearly two months later. (Pl.'s 56.1 Resp. ¶¶ 35, 37.) Finally, at a meeting on May 12, 2005, Faustin admonished Gomez for

her alleged failure to inform Faustin that she would be absent on four days during the spring 2005 semester, a violation of the school's Teachers Staff Attendance Policy. (Defs.' 56.1 Stmt. ¶ 37.) Gomez, who denies any wrongdoing, disputes the validity of Faustin's allegations, and attributes them solely to discriminatory animus based on her race. (Pl.'s 56.1 Cntr. Stmt. ¶¶ 12-13, 22; Pl.'s 56.1 Resp. ¶¶ 22, 27.)

## C. Gomez as the administration's "target"

Gomez alleges that when she arrived at work on the morning of November 30, 2004, she encountered Faustin and the other Assistant Principals in Faustin's office "all gathered together and ... whispering." (Gomez Dep. at 74:1-12.) Faustin turned to Gomez and said, "I have to tell you something. You are the target of Assistant Principal for this year." (*Id.* at 76:1-3.) Gomez interpreted Faustin's statement to mean that she "was not going to get her tenure this year," and that she was "the Assistant Principal that they [were] going after." (*Id.* at 76:5-7.)

Gomez further alleges that Faustin identified Defendant Roy as the administration official who was "target[ing]" Gomez for denial of tenure. (*Id.* at 77: 1-6.) In the same conversation, Faustin told Gomez that she was unaware of the reasons for Roy's intention to deny Gomez tenure. (*Id.* at 77:16-17.) Prior to that conversation, Gomez had never spoken to Roy. (*Id.* at 77:9-11.) When Defendant's counsel asked Gomez whether Faustin had indicated her agreement with the decision to "get rid" of Gomez, Gomez testified that she had not. (*Id.* at 77: 24-25.)

In March or April of 2005, during a private meeting with Faustin, Gomez asked Faustin why she was being targeted for denial of tenure. (Gomez Dep. at 101: 2-10.) Faustin explicitly rejected the possibility that Gomez was being targeted for any shortcoming in her performance, and responded affirmatively when Gomez asked whether she was being targeted because she is

Hispanic. (*Id.*) That exchange between Gomez and Faustin was explored through the following series of questions and answers during Gomez's deposition:

> Q. Earlier, you testified initially Ms. Faustin told you that Marlene Roy wanted to not give you tenure, did she tell you why Ms. Roy didn't want to give you tenure?
>
> A. No.
>
> Q. And now, based on these notes, Ms. Faustin said she would not give you tenure because you are Hispanic, and Ms. Faustin says it is because she didn't like Hispanics?
>
> A. I asked her if it is because I am Hispanic, and she said yes.
>
> Q. Did Ms. Faustin ever tell you she don't [*sic*] like Hispanics?
>
> A. Not in those words, no, she just said – I asked her, "Is it because I am Hispanic," and she said yes.
>
> Q. Did she say that this comment that you allegedly said, she said that it was because you were Hispanic, did she expand any further that it was somebody above her decision [*sic*] not to give you tenure because of your ethnicity or it was her decision not to give you tenure because of your ethnicity?
>
> A. We didn't discuss it.

(Gomez Dep. at 131:19-25, 13:1-9.)

Later in the deposition, the Defendants' attorney questioned Gomez about one of the allegations in the Complaint concerning Faustin's past statements. Paragraph 29 of the Complaint alleges that Faustin "has publicly stated, 'I don't like Hispanics.'" (Compl. at ¶ 29.) When Defendant's counsel questioned Gomez about the perceived discrepancy between that allegation and Gomez's earlier deposition testimony – which seemed to indicate that Faustin had not made such a comment explicitly – the following exchange took place:

> Q. In paragraph 29, you said that Defendant Faustin has publicly stated, "I don't like Hispanics." When did you hear her say that she does not like Hispanics?

7

A. When she said it to me.

Q. When you testified that she said she was not going to give you tenure because you were not Hispanic, it is differ [sic] from her publicly stating that I don't like Hispanics.

A. How is it different?

Q. From what I understand your testimony to be before, you were in a meeting with Ms. Faustin and you had a discussion regarding tenure and you were in a meeting with you and her, which nobody was present [sic], she said, she is not giving you tenure because you are Hispanic. This alleges that she publicly stated, "publicly," meaning, outside of the meeting, you and her, with other people to hear that, "I don't like Hispanics.["] When did she state this?

A. To me, I am a public [sic], she said it to me.

Q. I specifically asked you: Did she ever say that she did not like Hispanics. You said no. She didn't say she didn't like Hispanics, what she said was she was not giving you tenure because you were Hispanic.

A. To me, that means the same thing.

Q. So in this paragraph, Plaintiff alleges, "Defendant Faustin has publicly stated that I don't like Hispanics." You mean, she stated to you and no one else?

A. To me, yes.

(Gomez Dep. at 148:3-25, 149: 1-10.)

### D. Denial of tenure

In a letter dated June 23, 2005, Faustin informed Gomez that she was receiving an "Unsatisfactory" performance rating for the 2004-05 academic year. (Defs.' Ex. K: Letter from Faustin to Gomez dated June 23, 2005.) Noting Gomez's alleged failure to improve students' academic performance and her inability to develop the academic and disciplinary skills of her staff, Faustin concluded the letter with the observation that Gomez's talents "do not suffice and

8

they can possibly best be utilized somewhere else." (*Id.*) Gomez disputes the validity of Faustin's critiques. (Pl.'s 56.1 Resp. ¶¶ 38-40.)

On July 19, 2005, Defendant Peek-Davis, Community Superintendent of District 17, sent Gomez a letter to inform her that her probationary Assistant Principal status was under review. (Defs.' 56.1 Stmt. ¶ 41.) In her letter, Peek-Davis explained that she would base her decision on Gomez's "rating sheet" and any documentation that accompanied it. (Defs.' Exhibit L: Letter from Peek-Davis to Gomez dated July 19, 2005.) Gomez denies that she ever received that letter, the rating sheet, or the supporting documentation. (Pl.'s 56.1 Resp. ¶ 41; Pl.'s Aff. at 5.) By letter dated August 10, 2005, Gomez informed Peek-Davis that she believed she had been denied tenure because she is Hispanic. (Pl.'s 56.1 Resp. ¶ 42.) By letter dated August 22, 2005, Peek-Davis confirmed that Gomez's probationary service was being discontinued, effectively terminating Gomez's position as Assistant Principal and returning her to teacher's status. (Defs.' 56.1 Stmt. ¶ 43.) A few months later, in September 2005, Victoria Hernandez, a Hispanic woman, was appointed an interim acting Assistant Principal at P.S. 189, and has remained in that position ever since. (Defs.' 56.1 ¶ 45; P.'s Aff. at 4.)

## PROCEDURAL HISTORY

Gomez filed this action on June 1, 2006. At the close of discovery, the Defendants filed the instant motion for summary judgment. By Order dated November 17, 2008, this Court referred the Defendants' motion to the assigned Magistrate Judge, The Honorable Cheryl L. Pollak, for a Report and Recommendation. On March 20, 2007, Judge Pollak issued the R&R.

Judge Pollak recommended that the Defendants' motion for summary judgment be granted in part, dismissing in their entirety Gomez's hostile work environment, Title VII

retaliation, Due Process, and *Monell* claims. Judge Pollak further recommended dismissal of Gomez's Title VII disparate treatment claim against the individual Defendants, as well as her Equal Protection claim against all Defendants with the exception of Faustin. (R&R at 38.) Judge Pollak recommended that the Defendants' motion be denied, however, with respect to Gomez's Title VII disparate treatment claim against the DOE and her Equal Protection claim against Faustin. The Defendants filed timely objections to those portions of Judge Pollak's R&R that recommended denial of their motion. Gomez does not object to Judge Pollak's recommendation that her claims be dismissed as discussed above.

## APPLICABLE LAW

### A. Standard of review

If any party timely serves and files written objections to a magistrate judge's report and recommendation on a dispositive motion, the district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed, see *Thomas v. Arn*, 474 U.S. 140, 150 (1985), and instead reviews those portions for clear error, see *Covey v. Simonton*, 481 F. Supp. 2d 224, 226 (E.D.N.Y. 2007).

### B. Summary judgment standard

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions and affidavits demonstrate that there are no genuine issues of material fact in dispute

10

and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and a court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Brosseau v. Haugen*, 543 U.S. 194, 195 n.1 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine* issue for trial,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the Plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential

to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247-48).

C.  **Title VII standard**

The Second Circuit has emphasized "the need for caution about granting summary judgment to an employer in a discrimination case where ... the merits turn on a dispute as to the employer's intent." *Holcomb v. Iona Coll.*, 521 F.3d 130 (2d Cir. 2008) (citations omitted). District courts must remain mindful that, when an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, so that "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Even in discrimination cases, however, a plaintiff must provide more than conclusory allegations to defeat a motion for summary judgment, *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), as "[s]ummary judgment remains available for the dismissal of claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997).

Both Gomez and the Defendants have argued the instant motion according to the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the McDonnell Douglas "burden-shifting" inquiry, a plaintiff must first establish a *prima facie* case of discrimination by demonstrating that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) there were circumstances giving rise to an inference of unlawful discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). That burden is minimal and does not require specific evidence of discrimination. *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006). If a plaintiff meets that burden, the defendant employer must then articulate a "legitimate, nondiscriminatory

12

reason" for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802. A plaintiff must then provide evidence that the employer's explanation is not true but merely a pretext for discrimination. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001).

The ultimate burden to persuade the jury "that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981). It is not enough for a plaintiff merely to create doubt as to whether the defendant's stated reason was the real reason for the adverse employment action; she must also put forth "evidence that would permit a rational fact-finder to infer that the discharge was actually motivated, in whole or in part, by discrimination" on the basis of her protected characteristic. *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997).

### D.    Section 1983 – Equal Protection standard

42 U.S.C. § 1983 provides that "[e]very person who, under color of ... [law] ... , subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." The law of this Circuit instructs that "[t]he Equal Protection Clause prohibits discrimination, including that which occurs in the employment setting, whereby a person is treated differently than other similarly situated individuals, and such treatment is motivated by an intention to discriminate on the basis of his membership in a protected class." *Hawkins v. County of Oneida*, 497 F. Supp. 2d 362, 376 (N.D.N.Y. 2007) (citing *Zahara v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995).

Where a defendant discriminates against a plaintiff based on her membership in a protected class, that plaintiff will have a cause of action against said defendant under § 1983.

Generally, a plaintiff's § 1983 claim is analyzed under the same burden-shifting framework that applies to Title VII claims. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (citing *Monroe v. Pape*, 365 U.S. 167 (1961)). However, unlike in Title VII cases, an individual defendant can be held personally liable under § 1983 for invidious discrimination, provided that the plaintiff can prove that (1) the defendant "has deprived him [or her] of a federal right," and (2) the deprivation occurred while the defendant was acting "under color of state ... law." *See Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Monroe*, 365 U.S. at 171). To be held liable under § 1983, a defendant must be personally involved in the alleged constitutional deprivation. *See Back*, 365 F.3d at 222 (citing *Monroe*, 365 U.S. at 167).

## DISCUSSION

### A. Judge Pollak's recommendation of partial dismissal

Although Gomez does not object to those portions of Judge Pollak's R&R that recommend dismissal of certain claims and Defendants, the Court has reviewed said recommendations for clear error and, finding none, adopts them in their entirety. *See Covey*, 481 F. Supp. 2d at 226.

### B. Gomez's Title VII claim against the DOE

As Judge Pollak noted in her application of the *McDonnell Douglas* analysis to Gomez's Title VII claim, see R&R at 12-13, the Defendants concede that Gomez (1) is a member of a protected class, and (2) suffered an adverse employment action, *i.e.*, denial of tenure as an Assistant Principal. As for the qualification element of a *prima facie* case of Title VII disparate treatment, the Second Circuit has explained that "the qualification necessary to shift the burden to defendant for an explanation of the adverse action is minimal; [a] plaintiff must show only that

14

[s]he possesses the basic skills necessary for performance of [the] job." *Slattery*, 248 F.3d at 91 (internal citations omitted).

The Court agrees with Judge Pollak that, construing the record in the light most favorable to Gomez and drawing all reasonable inferences in her favor, Gomez has met the "minimal" burden required to establish the qualification element of her *prima facie* case. Although the Defendants insist that Gomez has failed to demonstrate "that she performed her job satisfactorily," their reasoning amounts to little more than an invitation for the Court to interpret the qualification element as shifting onto Gomez an obligation to anticipate and disprove, in her *prima facie* case, the Defendants' proffer of legitimate, nondiscriminatory reasons for the denial of tenure. That approach, which is at odds with *Slattery*, has been rejected by this Court in the past, see, e.g., *Johnson v. Smarte Carte, Inc.*, No. 04-CV-4473-RRM-SMG, 2008 U.S. Dist. LEXIS 76569, at *10-11; 2008 WL 4276590, at *4 (E.D.N.Y. Sept. 15, 2008), and is likewise rejected here. There is ample evidence in the record to support an inference that Gomez possessed at least the minimal skills necessary to perform the job of an Assistant Principal. Indeed, the Defendants themselves concluded that Gomez performed satisfactorily as an Assistant Principal for at least some of the time that she served in that role. (*See, e.g.*, Def's 56.1 Stmt. ¶ 13.)

The core of the Defendants' argument, however, focuses on their dual contentions (1) that the denial of Gomez's tenure did not occur under circumstances giving rise to an inference of discrimination and, in any event, (2) Gomez is unable to demonstrate that the Defendants' legitimate, nondiscriminatory reasons for denying her tenure were merely pretextual. In this regard, the Court agrees with Judge Pollak's conclusion that Gomez's allegations concerning

certain remarks made to her by Faustin "constitute evidence that the adverse employment decision was motivated by racial animus ... ." (R&R at 18.)

Specifically, Gomez testified in her deposition that Faustin informed her that she would be denied tenure because she is Hispanic. *See* p. 8, *supra*. Construing that evidence – and the record as a whole – in the light most favorable to Gomez and drawing all reasonable inferences in her favor, a rational factfinder could conclude that Faustin made the alleged comment both (1) as an individual with a role in the decision-making process, and (2) with regard to the adverse employment action at issue in this case. Accordingly, Faustin's comment constitutes evidence of discrimination and is not merely a "stray" remark.[2]

The Defendants' attempts to overcome Gomez's allegations concerning Faustin's statements are unavailing. First, the Defendants suggest that Faustin's comment regarding the intention to deny Gomez tenure was "taken out of context by both plaintiff and the Magistrate Judge ... ." (Defs.' Objs. to R&R at 11.) Next, the Defendants argue that Gomez's deposition testimony is inconsistent with a journal entry made by Gomez around the time of the alleged comment. (*Id.* at 12.) Finally, the Defendants characterize Gomez's allegation as "self-serving" and a "bald[] assert[ion]," and note that it occurred "during an unwitnessed conversation." (*Id.* at 2, 14.) Contrary to the Defendants' assertions, however, Judge Pollak did not take the alleged statement "out of context," but rather considered that statement in the light most favorable to Gomez, drawing all reasonable inferences therefrom in Gomez's favor. That, of course, is a court's proper role in deciding a summary judgment motion, and this Court's analysis is no

---

[2] *See, e.g., Rose v. N.Y. City Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (contrasting "the stray remarks of a colleague" with "comments made directly to" the plaintiff by someone with "enormous influence in the decision-making process"); *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (remarks were not "stray" where "other indicia of discrimination" tied them to the adverse employment action); *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 162-63 (2d Cir. 1998) ("stray" label inappropriate where decision-makers uttered discriminatory remarks near the time of the adverse employment action).

16

different. The remainder of the Defendants' argument is foreclosed by the well settled rule that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Liberty Lobby*, 477 U.S. at 255.

As discussed above, one of the most powerful pieces of evidence proffered by Gomez came through the following exchange with the Defendants' attorney during her deposition:

> Q.   ... [Faustin] didn't say she didn't like Hispanics, *what she said was she was not giving you tenure because you were Hispanic.*
>
> A.   To me, that means the same thing.

*See* p. 8, *supra* (emphasis added). If Gomez can prove at trial that Faustin made the racially discriminatory comments that Gomez attributes to her, a jury could reasonably find that racial discrimination played a role in the Defendants' decision to deny Gomez tenure.

Although Faustin's exact role in that decision is not entirely clear, based on the record before the Court, a reasonable factfinder could conclude that Faustin, the school's principal and the person who prepared Gomez's performance evaluations, was involved in the decision to deny Gomez tenure. Indeed, it can be inferred from Faustin's alleged discriminatory comment itself that she was involved in the decision. *See id.* Moreover, in *Bickerstaff v. Vassar College*, 196 F.3d 435 (2d Cir. 1999), the Second Circuit held that "the impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision in violation of Title VII." *Id.* at 450 (citing *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1560 (9th Cir. 1994)). Thus, the court held that, even where the ultimate decision-maker is free from bias, a plaintiff may defeat a summary judgment motion by demonstrating that "the individual shown to have the impermissible bias played a meaningful role in the promotion process." *Id.* Similarly,

in the instant case, a reasonable factfinder could conclude that Faustin "played a meaningful role" in the decision to deny Gomez tenure.

While the Defendants have proffered legitimate, nondiscriminatory reasons for their decision to deny Gomez tenure – namely, the performance deficiencies documented by Faustin – the record nevertheless contains sufficient evidence from which to conclude that those reasons were, in fact, pretextual. First and foremost, it was Faustin – the alleged source of the discriminatory comment discussed above – who documented Gomez's purported performance deficiencies. Moreover, as Judge Pollak observed:

> Although plaintiff had received letters in June 2004 advising her that she needed to improve in certain areas, she also received a satisfactory end-of-year performance rating in June 2004. Apart from Ms. Faustin's inability to contact plaintiff over the summer, the other areas of concern in plaintiff's performance upon which defendants now rely to justify Faustin's actions did not occur until March 2005, long after this comment was allegedly made in November 2004. If plaintiff had received a satisfactory rating in 2004, defendants do not explain what might have caused Faustin and Roy to have already decided in November that plaintiff "would lose her position" and "not get tenure." Viewed in conjunction with the second alleged statement by Faustin, which defendants do not refer to in their briefs, there is sufficient support for plaintiff s argument that the proffered legitimate reasons were a pretext for unlawful race discrimination to survive summary judgment.

(R&R at 18.) Reviewing the R&R *de novo*, the Court concurs with Judge Pollak's sound reasoning. In addition, the facts on which the Defendants rely to support their allegations concerning Gomez's performance problems are sharply contested. Given the facts of this case, notably including Faustin's statement to Gomez that she would be denied tenure because of her race, there is sufficient evidence of pretext to allow Gomez's Title VII claim to proceed. Accordingly, the DOE's motion for summary judgment as to that claim is DENIED.

## C. Gomez's Equal Protection claim against Faustin

Claims of employment discrimination brought pursuant to § 1983, based on alleged violations of a plaintiff's Equal Protection rights, are "subject to the same method of evaluation as a Title VII claim." *Dawson v. Bumble & Bumble*, 398 F.3d 211, 220 n.1 (2d Cir. 2005) (citing *Back*, 365 F.3d at 122-23). To hold an individual defendant personally liable under § 1983, however, a plaintiff must demonstrate that individual's personal involvement in the constitutional violation at issue. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001); *see also Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) ("In a § 1983 suit ... each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").[3]

For the reasons discussed above with respect to Gomez's Title VII discrimination claim, issues of fact exist as to whether Gomez was denied tenure because of her race. For substantially analogous reasons, Gomez has proffered sufficient evidence to warrant a trial as to whether Faustin violated Gomez's Equal Protection rights by participating in the denial of Gomez's tenure based on her race. Gomez's allegations concerning Faustin, if proven, could provide a basis for a reasonable factfinder to conclude that Faustin intentionally deprived Gomez of the Equal Protection-based right to be free from discrimination in employment. Therefore, Faustin's motion for summary judgment on Gomez's § 1983 Equal Protection claim against her is DENIED.

---

[3] Another requirement for individual liability on a § 1983 Equal Protection claim is that a defendant have acted under color of state law at the time of the alleged violation. *See, e.g., Patterson v. Balsamico*, 440 F.3d 104, 113-14 (2d Cir. 2006); *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003). Defendants do not contest that Faustin's actions, as relevant to this action, occurred under color of state law.

## CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Gomez's claims for (1) disparate treatment employment discrimination against Defendant DOE, and (2) § 1983 Equal Protection violations against Defendant Faustin, will proceed toward trial. The remainder of Gomez's claims are DISMISSED. The parties shall proceed in preparing this case for trial under the direction of Magistrate Judge Pollak.

SO ORDERED.

Dated: Brooklyn, New York
July 15, 2009

ROSLYNN R. MAUSKOPF
United States District Judge